## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALLEN ALEXANDER PARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-1137-D |
| | ) | |
| SHERIFF P.D. TAYLOR, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

This matter comes before the Court for review of the Report and Recommendation [Doc. No. 79] issued by United States Magistrate Judge Amanda Maxfield Green pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff Allen Alexander Parks, a state prisoner appearing *pro se* and *in forma pauperis*, alleges violations of his federal constitutional rights while he was in the custody of the Oklahoma County Detention Center. Judge Green's R&R recommends granting in part and denying in part motions to dismiss filed by Defendants Robert Benjamin, Matthew Yerby, Danny Honeycutt, and P.D. Taylor [Doc. Nos. 47, 48, 49].

Defendants Benjamin, Yerby, Honeycutt, and Taylor have filed timely Objections [Doc. Nos. 82, 83, 84]. Plaintiff also submitted an Objection [Doc. No. 90].[1] The Court

---

[1] Plaintiff was previously granted two extensions of time to object to the R&R [Doc. Nos. 85, 88], with the most recent extension granting him until November 29, 2021 to submit an objection. Plaintiff's Objection was not filed until January 21, 2021, and was accompanied by a "Motion for Leave of Court to File an Oversized Objection 08/31/21 Report and Recommendation [Doc. No. 86]." The motion [Doc. No. 89] and Plaintiff's Objection both attest under penalty of perjury that they were placed into the prison's mail

must make a *de novo* determination of issues specifically raised by the objections, and may accept, modify, or reject the recommended decision or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The parties have waived all objections to some portions of the R&R, including Judge Green's summary of the procedural history of the case. *See* R&R at 2-3. This introductory part of the R&R is adopted as though fully set forth herein.

## BACKGROUND

Plaintiff's claims arise out of his pre-trial confinement in the Oklahoma County Detention Center ("OCDC"), where he alleges that he was subjected to the use of excessive force and retaliated against for submitting grievances against jail personnel. The Amended Complaint is over 200 pages and purports to set out 25 claims against 19 defendants, most of whom are OCDC officials or staff members.[2] *See* Doc. Nos. 46, 46-1, 46-2. Plaintiff has

---

system with postage prepaid on November 26, 2021. Although the Court is skeptical of this claim, it will consider Plaintiff's Objection as timely filed. *See Price v. Philpot,* 420 F.3d 1158, 1164 (10th Cir. 2005) (applying prison mailbox rule to civil rights complaint).
[2] The Amended Complaint is a rambling narrative full of statements that are unnecessary, repetitive, and at times, incomprehensible. Moreover, "in its sheer length," Plaintiff has made his Amended Complaint largely "unintelligible 'by scattering and concealing in a morass of irrelevancies the few allegations that matter.'" *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (quotation omitted). These sorts of "wordy and unwieldy" pleadings frustrate the Court's ability to apply the pleading standard articulated by Rule 12(b)(6), not to mention prejudice defendants, who must hunt for relevant factual statements amongst a chaotic stream of allegations. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Just. Ctr.*, 492 F.3d 1158, 1162-1163 (10th Cir. 2007). Accordingly, the Court believes it would be well within its discretion to dismiss Plaintiff's Amended Complaint without prejudice for failure to include "a short and plain statement of the claim" in accordance with Rule 8. *See Mann*, 477 at 1148 (stating that failure to include a short and plan statement of the claim is a "sufficient reason to dismiss the complaint."); *Abdelsamed v. Colorado*, 6 F. App'x 771, 772 (10th Cir. 2001) (unpublished) (affirming district court's striking of 103-page complaint for noncompliance with Rule 8).

asserted the following claims against the four Defendants who currently seek dismissal: As to Defendant Benjamin, Plaintiff alleges claims for excessive force in violation of the Fourteenth Amendment, unlawful retaliation in violation of the First Amendment, and falsification of reports in violation of the Fourteenth Amendment. As to Defendant Yerby, Plaintiff alleges claims for unlawful retaliation in violation of the First Amendment and excessive force in violation of the Fourteenth Amendment. As to Defendants Taylor and Honeycutt, Plaintiff alleges three claims of excessive force in violation of the Fourteenth Amendment by ordering detention officers to assault Plaintiff, three claims of retaliation in violation of the First Amendment, failure to train in violation of the Fourteenth Amendment, destruction of evidence in violation of the Fourteenth Amendment, and failure to protect in violation of the Fourteenth Amendment. Liberally construed, the Amended Complaint also attempts to assert a claim for conspiracy against Defendants based on their alleged agreement to make the conditions at the jail unbearable. Plaintiff has sued each Defendant in his individual and official capacity.

Defendants Benjamin, Yerby, Taylor and Honeycutt argue that Plaintiff has failed to state a claim and that they are entitled to qualified immunity. The R&R recommends finding that Plaintiff has adequately stated claims for excessive force and retaliation and that Defendants are not entitled to qualified immunity on these claims. The R&R also recommends dismissal of the remaining claims for failure to state a claim and dismissal of

---

However, given that Defendants have already invested significant time and effort in moving to dismiss the Amended Complaint and providing Objections to the R&R, the Court will consider the merits of the arguments.

the official capacity claims. After setting out the applicable legal standard, the individual objections by Mr. Benjamin, Mr. Yerby, Sheriff Taylor, Mr. Honeycutt, and Plaintiff will each be addressed in turn.

## APPLICABLE STANDARD

When considering dismissal of a claim under Fed. R. Civ. P. 12(b)(6), the court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quotation omitted). A complaint is legally sufficient when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a complaint's sufficiency, all well-pled factual allegations are accepted as true and construed in the light most favorable to the non-moving party. *Peterson*, 594 F.3d at 727. Further, when a party is proceeding pro se, his allegations and argument must be liberally construed. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

When a defendant seeks dismissal on the basis of qualified immunity, the plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as

the plaintiff maintains." *Stewart v. Beach*, 701 F.3d 1322, 1331 (10th Cir. 2012) (citation omitted).

## DISCUSSION

### A.  Mr. Benjamin's Objection

#### 1.  Fourteenth Amendment Excessive Force Claim

The R&R recommends finding that Plaintiff has adequately stated a claim against Mr. Benjamin for excessive force and that he is not entitled to qualified immunity. Mr. Benjamin objects to both of these recommendations.

First, he argues that the Amended Complaint does not state a claim for excessive force because it fails to include facts showing that the force used was objectively unreasonable. The Fourteenth Amendment governs excessive force claims brought by pretrial detainees such as Plaintiff. *McCowan v. Morales*, 945 F.3d 1276, 1283 n. 6 (10th Cir. 2019). To succeed on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Whether the force used was objectively unreasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, the Supreme Court has identified the following nonexclusive list of factors as bearing on the reasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* In considering these factors, it is appropriate to "take account of the legitimate interests in managing a jail" and defer to "policies and practices needed to maintain order and institutional security." *Id.* at 399-400.

In support of his excessive force claim against Mr. Benjamin, Plaintiff alleges the following:

- A bag of cookies was placed immediately outside of Plaintiff's locked cell door entrance by another inmate.
- Mr. Benjamin opened Plaintiff's cell door, Plaintiff asked if he could retrieve the cookies, and Mr. Benjamin nodded and said "Sure Parks, go ahead."
- Plaintiff kneeled to retrieve the cookies, Mr. Benjamin yelled "You're a sucka" and struck Plaintiff in the chin and jaw with his knee. *Id.*
- Plaintiff fell to the floor and Mr. Benjamin punched him in the back of the head.
- Plaintiff raised his hands to cover his head and Mr. Benjamin and other officers kicked and stomped on Plaintiff.
- Mr. Benjamin and other detention officers stated to Plaintiff that the assault was retaliation for filing grievances against OCDC staff.
- Plaintiff suffered concussion-like symptoms and a hairline to moderate fracture of the jaw.

Doc. No. 46-3 at 1, Doc. No. 46-4 at 1-5, 26-27.

Taking these allegations as true, and construing them in the light most favorable to Plaintiff, he has adequately stated a claim for excessive force against Mr. Benjamin. The allegations describe the amount and type of force used in detail and indicate that Plaintiff suffered serious injuries as a result of the incident. Additionally, under Plaintiff's version of the facts, the force was not used in response to a security problem, perceived threat, or active resistance, but in response to Plaintiff retrieving a bag of cookies after he was given explicit permission to do so.

Mr. Benjamin argues that is not enough. Although he concedes that Plaintiff has described a situation where there was no apparent need to use force, Mr. Benjamin contends that Plaintiff has provided no factual basis upon which to gauge whether the use of force was objectively reasonable. On the contrary, Plaintiff provides several details that can be used to gauge the objective reasonableness of the force used, including that he was given permission to retrieve the cookies, he was kneeling at the time he was first struck, he was punched and kicked while face down on the ground, and he suffered serious injuries. Thus, unlike in the cases cited in Mr. Benjamin's objection, Plaintiff does much more than make a "bald allegation" that he was assaulted. *See Kemmerly v. Hill,* 814 F. App'x 378, 384 (10th Cir. 2020). Plaintiff has therefore adequately stated a claim for excessive force under the Fourteenth Amendment against Mr. Benjamin.

Mr. Benjamin next argues that, even assuming Plaintiff has adequately pled a constitutional violation, he is entitled to qualified immunity. Qualified immunity protects public officials from suit "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (citation omitted). As Mr. Benjamin points out, this inquiry "must be 'particularized' to the facts of the case" and "should not be defined 'at a high level of generality.'" *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 552 (2017) (citations omitted). It is not, however, necessary to locate a "case directly on point" before denying qualified immunity. *Id.* Rather, "[t]he dispositive

question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* Thus, qualified immunity is not available where "existing precedent" has "placed the statutory or constitutional question beyond debate." *Id.* (quotation marks and citation omitted). Put another way, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citation omitted).

At the time of this incident, it was "beyond debate" that "the Fourteenth Amendment's guarantee of due process prohibits any punishment of those awaiting trial." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). It was equally clear that any force applied "maliciously and sadistically for the very purpose of causing harm" violates the Eighth Amendment and, by extension, a pretrial detainee's rights under the Fourteenth Amendment. *Id.* ("Conduct that violates the clearly established rights of convicts necessarily violates the clearly established rights of pretrial detainees.").

Given this clearly established law, any reasonable detention officer would know that permitting an inmate to retrieve something outside of his cell and then using that as a pretense to strike and kick the inmate is unlawful. Combined with the allegation that certain Defendants, including Mr. Benjamin, stated that the assault was retribution for submitting grievances, the alleged facts show that the force was deployed to cause harm rather than to control a perceived security threat. Only the plainly incompetent officer or an officer knowingly violating the law would apply force in the manner described and under the circumstances articulated in the Amended Complaint. Accordingly, Mr. Benjamin is not entitled to qualified immunity at this stage. Of course, this does not preclude Mr. Benjamin

or any other Defendant from re-asserting qualified immunity once the factual record has been developed.

### 2. First Amendment Retaliation Claim

The R&R recommends finding that Plaintiff has stated a claim for unlawful retaliation under the First Amendment and recommends denying qualified immunity to Mr. Benjamin. Mr. Benjamin objects to the R&R's conclusion that Plaintiff has adequately pled a constitutional violation.

The Amended Complaint asserts that Mr. Benjamin and others violated Plaintiff's First Amendment rights when they beat him in retaliation for submitting grievances regarding prison staff. To state a claim for government retaliation in violation of the First Amendment, a plaintiff must allege "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007); *see also Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). Mr. Benjamin challenges the sufficiency of the allegations only with respect to the third element, arguing that Plaintiff has not pled specific facts showing the use of force occurred in close proximity to or because of the filing of a grievance.

Generally, to show a retaliatory motive, a prisoner must indicate "what grievances he had previously filed that provoked this action or their proximity in time to the alleged retaliatory action." *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013)

(unpublished). Plaintiff has alleged that he filed 438 grievances over 536 days, Doc. No. 46-4 at 105, that Mr. Benjamin was aware of the grievances, and that Mr. Benjamin stated that the grievances motivated his actions. Doc. No. 46-4 at 3 (stating that Mr. Benjamin "punched me in the back my head and yelled out, 'This is what happens when you [expletive] write grievances on my fellow officers, Parks!'"). Although Plaintiff did not specifically state how many days passed between the filing of his latest grievance and the use of force, his allegations regarding Mr. Benjamin's statements are sufficient to show that the action was motivated by the constitutionally protected activity.[3] Plaintiff has therefore adequately stated a claim for First Amendment retaliation against Mr. Benjamin.

---

[3] The Amended Complaint includes lengthy and detailed "confessions" from a number of defendants regarding their motivation for taking certain actions. Some of these confessions include statements that closely reflect elements of Plaintiff's claims. Thus, it appears that Plaintiff may be attempting to dress up what would otherwise be a conclusory allegation as a fact by placing it in the context of a statement by a defendant. Nevertheless, whether a defendant made certain statements is a specific factual allegation, requiring no additional inferences, that can be proved or disproved with evidence. Accordingly, as dubious as these confessions may seem, at this stage the Court is required to assume that the statements were made. Additionally, although many of Plaintiff's alleged facts seem unlikely, the Court cannot say they rise to the level of the irrational or depict fantastic or delusional scenarios such that a dismissal on the basis of frivolousness is appropriate. *Cf. Strege v. Comm'r, SSA*, 848 F. App'x 368, 369 (10th Cir. 2021) (unpublished) (claim describing scenario where government was swapping babies and putting human hearts in nuclear reactors dismissed as factually frivolous); *Flores v. U.S. Atty. Gen.*, 442 F. App'x 383, 384 (10th Cir. 2011) (unpublished) (claim that government was using technology with a direct signal to outer space to calculate genetic code and cause severe pain to plaintiff's family members dismissed as factually frivolous).

## B.  Mr. Yerby's Objection

### 1.  Fourteenth Amendment Excessive Force Claim

The R&R recommends finding that Plaintiff has stated a claim against Mr. Yerby for excessive force[4] and finding that Mr. Yerby is not entitled to qualified immunity. Mr. Yerby objects to both recommendations. The basis of this claim is Plaintiff's allegation that he told Mr. Yerby that his handcuffs, which had been placed on him by another officer, were too tight, but Mr. Yerby failed to loosen them. Plaintiff alleges that the handcuffs "remained deeply embedded in the plaintiff's wrists for 20 minutes," that he was bleeding, and that he experienced "long term damage" such as carpel-tunnel syndrome, numbness and tingling. Doc. No. 46-3 at 4, 7, 25; Doc. No. 46-4 at 6-7, 26.

As noted in part A(1), a pretrial detainee's excessive force claim typically requires evaluating several factors to determine if the force used was objectively unreasonable. But where, as here, a claim asserts that "the handcuffing is permissible yet the manner of handcuffing may render the application of force excessive," evaluation of these objective factors is less helpful. *Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) (quoting *Fisher*, v. City of Las Cruces, 584 F.3d 888, 896 (10th Cir. 2009)). Instead, to establish an excessive force claim based on unduly tight handcuffing, a plaintiff must "allege[] some actual injury from the handcuffing and allege[] that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too

---

[4] The Amended Complaint styled this claim as one for "Denial of Reasonable Safety – Failure to Act to Protect" under the Fourth and Fourteenth Amendments. Judge Green liberally construed this as a claim for excessive force against a pretrial detainee under the Fourteenth Amendment. The Court agrees with this assessment.

tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). An "actual injury" is one that is more than "*de minimis.*" *Fisher*, 584 F.3d at 898.

Mr. Yerby argues that Plaintiff's handcuffing claim fails because he has not adequately alleged an injury that is more than *de minimis*. In support, he cites *Morreale v. City of Cripple Creek*, 113 F.3d 1246 (10th Cir. 1997) (unpublished) and *Wells v. State of Okl. ex rel. Dep't of Pub. Safety*, 97 F.3d 1465 (10th Cir. 1996) (unpublished), which both affirmed summary judgment in favor of the defendant-officers with respect to an excessive force claim based on unduly tight handcuffing. But the evidence presented in those cases is significantly different than the facts alleged by Plaintiff. In *Morreale*, 113 F.3d at *1-2, the plaintiff complained several times about the tightness of the handcuffs and asserted that injuries to her wrist and shoulder prevented her from pursuing her career. However, there was also undisputed evidence that the officer took steps to ensure that the handcuffs were not too tight, such as ensuring that there was a gap between the handcuff and wrist and double locking the handcuffs so they would not tighten further. *Id.* at *1, 5. In light of this evidence, and lacking any allegations that the force "was substantial or abusive," the Tenth Circuit concluded that she could not maintain an excessive force claim. Similarly, in *Wells*, 97 F.3d at *3, there was evidence that the officer used the minimal degree of force necessary to restrain the plaintiff.

Here, unlike in *Morreale* and *Wells*, there are allegations that the force used to apply the handcuffs was more than the minimal amount necessary – the Amended Complaint asserts that the handcuffs were "squeezed…down one to two inches deep" onto Plaintiff's wrists and that the tightness was causing him to bleed. Doc. 46-4 at 4-5. Further, when

viewed in the light most favorable to Plaintiff, the injuries identified in the Amended Complaint cannot fairly be described as more than just "fleeting discomfort" or "red marks or swelling that disappear in a few hours or day." *Fisher*, 584 F.3d at 900; *see also Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208-1209 (10th Cir. 2008) (denying qualified immunity where plaintiff presented evidence showing that he complained about tightness of handcuffs, that pain had not subsided since his arrest, and that he had been diagnosed with a nerve injury). Although the evidence may ultimately show that Plaintiff's injuries were minor or non-existant, Plaintiff's allegations concerning long-term pain and numbness are sufficient at this stage to state a claim for excessive force.

Mr. Yerby also argues, somewhat in passing, that he is entitled to qualified immunity because he is not the officer who initially placed the handcuffs on Plaintiff. However, "[i]t is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983." *Mascorro v. Billings*, 656 F.3d 1198, 1204 n. 5 (10th Cir.2011). "Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Id.* Relying on this principle, the Tenth Circuit denied qualified immunity in *Vondrak*, 535 F.3d at 1210, to an officer who was in "close proximity to the initial handcuffing" and present "immediately thereafter" although the officer did not actually place the handcuffs on the plaintiff. The Amended Complaint includes allegations suggesting that Mr. Yerby was in close proximity to the initial handcuffing and present immediately thereafter. Moreover, Mr. Yerby does not dispute that the allegations state Plaintiff repeatedly complained to Mr. Yerby about the handcuffs.

For these reasons, and because "the right to be free from unduly tight handcuffing [is] 'clearly established,'" Mr. Yerby is not entitled to qualified immunity at this stage. *Id.* at 1209.

### 2. First Amendment Retaliation Claim

The R&R recommends finding that Plaintiff has adequately stated a claim against Mr. Yerby for retaliation in violation of the First Amendment and that he is not entitled to qualified immunity. Mr. Yerby objects to these recommendations, arguing that Plaintiff has failed to allege facts sufficient to show a First Amendment violation.

The basis of this retaliation claim is Plaintiff's allegation that Mr. Yerby refused to loosen the handcuffs. Plaintiff asserts that when he complained to Mr. Yerby he was told that the "sole reason" he would not loosen the handcuffs was because Plaintiff had filed grievances against other officers. Doc. No. 46-4 at 6. Like the retaliation claim asserted against Mr. Benjamin, this fact is sufficient to show that the adverse action was motivated by Plaintiff's constitutionally protected activity and Plaintiff has therefore adequately stated a retaliation claim against Mr. Yerby

### C. Sheriff Taylor's and Mr. Honeycutt's Objection

#### 1. Fourteenth Amendment Excessive Force Claims

The Amended Complaint asserts three excessive force claims against Sheriff Taylor and Mr. Honeycutt based on the following incidents: (1) the alleged assault involving Mr. Benjamin described in part A(1); (2) an incident where Defendant Neal slammed Plaintiff's head into his cell door while he was handcuffed and not resisting [Doc. No. 46-3 at 42-43]; and (3) an incident where Defendant Hendershott – with the "force of a football player

tackling an opponent" – slammed Plaintiff's face into a concrete wall and punched him in the head multiple times while Plaintiff was handcuffed and not resisting. [Doc. Nos. 46-3 at 62-63; 46-4 at 47-49].[5] The R&R recommends finding that Plaintiff has stated a claim for excessive for against Sheriff Taylor and Mr. Honeycutt in their individual capacities as to these incidents and denying them qualified immunity. Defendants object to both recommendations.

First, Sheriff Taylor and Mr. Honeycutt argue that the Amended Complaint fails to include allegations showing that they personally participated in the use of force incidents. Of course, "[u]nder § 1983, government officials are not vicariously liable for the misconduct of their subordinates." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Rather, to establish a claim against a supervisor based on a subordinate's unconstitutional act, "a plaintiff must show an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.*

With respect to each of the use of force incidents, Plaintiff has alleged that the involved officers told him that Sheriff Taylor and Mr. Honeycutt ordered the assaults. *See* Doc. No. 47-4 at 12, 29, 47-48. An officer's statement that he was personally directed by a supervisor to carry out an assault is sufficient to show an affirmative link between the

---

[5] The Amended Complaint also attempts to assert excessive force claims against Sheriff Taylor and Mr. Honeycutt based on unduly tight handcuffing that occurred following these incidents. The R&R found that, as to Sheriff Taylor and Mr. Honeycutt, the handcuffing claims are subsumed by the other excessive force claims. Because the handcuffing occurred as part of the alleged use of excessive force that forms the basis of Plaintiff's other claims, the Court agrees that these claims are duplicative and should be dismissed.

supervisor and the violation. *See Serna*, 455 F.3d at 1153 (noting that a plaintiff could "surely" proceed on his § 1983 claim against prison director if he had evidence that prison director instructed his subordinates to apply excessive force). Accepting Plaintiff's allegations as true, he has sufficiently pled that Sheriff Taylor and Mr. Honeycutt personally participated in the excessive force incidents.

Defendants next assert that they are entitled to qualified immunity because there is no clearly established law governing the alleged facts.[6] Of course, precedent does make clear that ordering a subordinate to attack a pretrial detainee – which is the specific claim lodged against Sheriff Taylor and Mr. Honeycutt – is unlawful. *Serna*, 455 F.3d at 1152-1153; *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). What Defendants really appear to be arguing, then, is that the underlying use of force incidents do not rise to the level of a constitutional violation.

With respect to the first incident – where Mr. Benjamin purportedly kneed Plaintiff in the jaw – the Court has already determined that Plaintiff has stated a sufficient excessive

---

[6] Mr. Honeycutt additionally contends that he is not an appropriate defendant to these claims because he has no authority or control over the jail. The Amended Complaint represents, and the briefing confirms, that Mr. Honeycutt is the General Counsel for the Oklahoma County Detention Center. Other than conclusory statements that Mr. Honeycutt is a supervisor, the Amended Complaint includes no factual allegations indicating that Mr. Honeycutt exercises any sort of supervisory responsibilities over the jail staff. Typically, a claim based on a "failure to supervise is only actionable under § 1983 against a defendant who had a duty to supervise." *Serna*, 455 F.3d at 1154. However, Plaintiff's claims appear not to be based on Mr. Honeycutt's failure to supervise any subordinates, but on his direct participation in the assaults via his alleged orders. Accordingly, at this stage, dismissal of this particular claim is not appropriate. *See id.* (noting that excessive force claim based on active participation of prison director could proceed if there was evidence that he directly ordered jail staff to apply excessive force but that claim based on failure to supervise could not proceed because prison director did not supervise the officers involved).

force claim and that a reasonable officer would know that the actions taken were unlawful. As to the other two incidents, Sheriff Taylor and Mr. Honeycutt argue that there are no factually similar cases clearly establishing that a detention officer cannot "forcibly direct[] a prisoner to a cell to which the prisoner refused to go or forcibly prevent[] a prisoner from escaping from his cell." Doc. No. 82 at 11. This may be true, but this is not an accurate summation of the facts alleged in the Amended Complaint. Plaintiff does not allege that he was trying to escape or refusing to return to his cell, but instead asserts that during both incidents he was handcuffed, not resisting, and was attacked as retaliation for filing grievances.[7] Doc. No. 46-4 at 28-32, 47-48. Plaintiff has also provided specific details about the manner and degree of force applied, and has therefore plausibly shown that the force was objectively unreasonable.[8] And, as explained in part A(2), a reasonable detention officer would know that purposefully striking or attacking a pretrial detainee as retribution for lodging a complaint is a violation of clearly established law. Accordingly, he has shown

---

[7] Sheriff Taylor and Mr. Honeycutt also assert in their Objection that *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2004), a case cited in the R&R, is factually distinct because "the Amended Complaint is devoid of any factual allegations that Parks was restrained during the alleged use of force incidents." Doc. No. 82 at 10. However, as noted above, Plaintiff does allege that he was handcuffed when Mr. Neal and Mr. Hendershott allegedly attacked him. Given the length and verbosity of the Amended Complaint, it is entirely understandable that Defendants might overlook certain allegations.

[8] Defendants reference another lawsuit filed by Plaintiff, *Parks v. Taylor, et al.*, CIV-2018-968-D, which included claims against Mr. Neal and Mr. Hendershott based on the same use of force incidents described in this action. Those claims were dismissed without prejudice [Doc. Nos. 93, 129]. In that action, the Court found that Plaintiff "failed to state a § 1983 claim of an excessive use of force against Lt. Hendershott, particularly in light of his defense of qualified immunity." *Parks v. Taylor*, No. CIV-18-968-D, 2020 WL 1271587, at *5 (W.D. Okla. Mar. 17, 2020). A different result is warranted here because Plaintiff has provided additional factual details as to how the force was applied, the degree of force used, and the circumstances surrounding the use of force.

that these underlying incidents could rise to the level of a constitution violation, and qualified immunity for Sherriff Taylor and Mr. Honeycutt in allegedly ordering the attacks is not warranted at this time.

## 2.  First Amendment Retaliation Claims

The Amended Complaint asserts that Sheriff Taylor and Mr. Honeycutt retaliated against Plaintiff in violation of the First Amendment by ordering the three assaults identified in part C(1) as revenge for filing grievances. The R&R recommends finding that Plaintiff has stated plausible retaliation claims based on these incidents. Sheriff Taylor and Mr. Honeycutt object, arguing that Plaintiff has failed to plead specific facts showing that the alleged retaliation occurred because of the grievance filings.

For substantially the same reasons articulated in part A(2), Plaintiff has stated plausible claims for retaliation. The Amended Complaint alleges that Plaintiff filed 438 grievances over 536 days and that numerous officers made statements indicating that Sheriff Taylor and Mr. Honeycutt directed them to assault Plaintiff because of the grievances. Assuming the truth of these allegations, they are adequate to show that Sheriff Taylor and Mr. Honeycutt were personally involved in the retaliation and that the retaliation was motivated by a constitutionally protected activity. Accordingly, Plaintiff has adequately stated a retaliation claim against Sheriff Taylor and Mr. Honeycutt and they are not entitled to qualified immunity.

## D.  Plaintiff's Objection

Plaintiff's objection states that he "specifically objects to any and all" findings that he failed to state a claim against any Defendant, but he only provides specific argument as

to a handful of issues. Plaintiff's catch-all statement fails to comply with the specific objection requirement of Fed. R. Civ. P. 72, and he has therefore waived review of all findings and conclusions contained in the R&R that are not separately addressed in his Objection. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("Therefore, we hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

### 1. Conspiracy Claim

The R&R found that the Amended Complaint, liberally construed, attempted to allege a conspiracy claim under § 1983. The R&R described the alleged conspiracy as involving an agreement between Sheriff Taylor, Mr. Honeycutt, jail employees, the Board of County Commissioners, and the Oklahoma County District Attorney's office to make conditions at the jail unbearable for the purpose of coercing pretrial detainees to plead guilty and thereby leave the facility. In support of this claim, Plaintiff alleges that certain detention officers and an Assistant District Attorney made statements to him confessing to the conspiracy's existence. The R&R recommends dismissing this claim as inadequately pled because the alleged confessions appear structured to recite the formula of a conspiracy cause of action. Plaintiff objects to this recommendation and argues that his allegations regarding the use of excessive force, retaliation, and falsification of reports sufficiently state a claim for conspiracy.[9]

---

[9] Plaintiff also argues that he should be permitted to pursue a conspiracy claim under 18 U.S.C. § 241. This is a criminal statute that does not provide him a cause of action.

For allegations of conspiracy to form the basis of a § 1983 claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). Unlike his excessive force claims and retaliation claims, Plaintiff's conspiracy claim is based entirely on statements confessing to its existence. He provides no independent factual allegations plausibly suggesting that an agreement to retaliate against him or to harm other inmates existed between OCDC officials and the District Attorney's Office. Further, the confessions are not direct statements from Sheriff Taylor, Mr. Honeycutt, or the other alleged orchestrators of the conspiracy, but from subordinates and third parties who merely claim to have knowledge of the conspiracy. These confessions alone, which consist largely of conclusory statements about the existence of an agreement, simply do not raise "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Accordingly, Plaintiff has failed to state a claim for conspiracy against Sheriff Taylor, Mr. Honeycutt, or any other Defendant.

## 2. Fourteenth Amendment Claims Against Mr. Benjamin, Mr. Honeycutt, and Sheriff Taylor

The Amended Complaint asserts that Mr. Benjamin, Mr. Honeycutt, and Sheriff Taylor deprived Plaintiff of his due process rights by suppressing or destroying evidence. The R&R recommends dismissing these claims because Plaintiff failed to include any allegations showing that he was deprived of a protected liberty interest. Plaintiff objects to this finding, but provides no persuasive argument or authority explaining why a different result is warranted.

To succeed on his Fourteenth Amendment claim, Plaintiff must show that he was deprived of a liberty interests. "In the prison context…protected liberty interests are at issue when the prison inmate is subjected to: (1) conditions that 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' or (2) disciplinary actions that 'inevitably affect the duration of his sentence.'" *Marshall v. Morton*, 421 F. App'x 832, 837 (10th Cir. 2011) (unpublished) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

Regarding the claim against Mr. Benjamin, Plaintiff alleges that Mr. Benjamin made false statements on an incident report and a jail hearing officer (wrongfully) found Plaintiff guilty of a misconduct violation. Doc. No. 46-3 at 31-32. Plaintiff does not, however, allege that the violation resulted in a significant hardship being imposed on him or affected the duration of his sentence. Doc. No. 46-4 at 88-94. The alleged false report therefore did not implicate a protected liberty interest and he has failed to state a claim against Mr. Benjamin under the Fourteenth Amendment.

As to Sheriff Taylor and Mr. Honeycutt, Plaintiff claims that they destroyed video evidence of excessive force incidents, delayed responding to grievances, and destroyed legal mail.[10] Doc. No. 43-3 at 53-55. But Plaintiff does not point to any specific instances

---

[10] This claim also includes allegations that inmates were subject to excessive lock downs and that jail staff were not properly disciplined for using excessive force. The allegations related to excessive lock downs are the subject of a separate lawsuit brought by Plaintiff and are not properly before the court in the present case. *See Parks v. Taylor*, CIV-19-1188-D. The allegations regarding a failure to discipline appear to be more closely related to Plaintiff's failure to train or supervise claim, discussed *infra*, and the Court has considered them in conjunction with that claim.

where these Defendants were personally involved in these alleged acts or provide anything more than conclusory allegations. Plaintiff has therefore failed to adequately allege that he was deprived of a liberty interest and, as a result, it is not necessary to evaluate whether he received adequate procedural due process. *Marshall*, 421 F. App'x at 837. Accordingly, Plaintiff has failed to state a claim for destruction of evidence or falsification of reports against Sheriff Taylor or Mr. Honeycutt. [11]

### 3. Official Capacity Claims

The Amended Complaint asserts claims against Sheriff Taylor in his official capacity as well as against the Board of County Commissioners. The R&R recommends dismissal of the official capacity claims as redundant to the claims asserted against the Board. Plaintiff objects to this recommendation, arguing that his official capacity claims against Sheriff Taylor are not redundant because the Board has not been served in this action.[12]

---

[11] Because Plaintiff has not adequately pled an underlying constitutional violation with respect to this claim, he has also failed to state a claim for municipal liability against the County. *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1156 (10th Cir. 2001) ("In sum, we hold that absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the City of Tulsa on account of its policies, customs, and/or supervision with regard to the individual defendants.").

[12] The R&R also recommends dismissal of the official capacity claims asserted against Mr. Benjamin, Mr. Yerby, and Mr. Honeycutt. Plaintiff does not specifically object to dismissal of the claims as to Mr. Benjamin and Mr. Yerby. Liberally construed, Plaintiff's filing could be read to object to the dismissal of the official capacity claims as to Mr. Honeycutt. Dismissal of the official capacity claims as to Mr. Honeycutt is appropriate because Plaintiff has not adequately alleged that Mr. Honeycutt acts as a final policymaker for the OCDC or the County.

Under federal law, official capacity suits brought under § 1983 "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. For this reason, it is generally redundant to name both a county sheriff in his official capacity and the county that he represents as defendants in § 1983 lawsuit. *See Chrisman v. Bd. of Cty. Commissioners of Oklahoma Cty.,* No. CIV-17-1309-D, 2018 WL 4291761, at *3 (W.D. Okla. Sept. 7, 2018) (dismissing claims against Sheriff Taylor in his official capacity where the Board of County Commissioners was also named as a defendant). Here, however, it is premature to dismiss the official capacity claims as redundant because the Board has not yet been served and has not appeared as a defendant in this action.

Moreover, state law permits official capacity suits when the named officer is alleged to have been directly liable to the plaintiff:

> In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, "Board of County Commissioners of the County of _____," but this provision shall not prevent county officers, where authorized by law, from suing in their official name for the benefit of the county. Suit may be brought against a county by naming a county officer identified in Section 161[13] of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract. Otherwise, suit may be brought against a county by naming the Board of County Commissioners of the County of _____; in actions against the Board not arising out of contract, upon motion,

---

[13] This section provides that a "County officer" includes a county sheriff. Okla. Stat. tit. 19, § 161(1).

the Court may substitute a county officer identified in Section 161 of this title in his or her official capacity for the Board upon a showing that such county officer is better suited to represent and defend the county under the particular facts of the case.

Okla. Stat. Ann. tit. 19, § 4. *See also Kirkendall-Heller v. Bd. of Commissioners of Oklahoma Cty.,* No. CIV-21-0011-F, 2021 WL 2371348, at *1 (W.D. Okla. June 9, 2021) (explaining that under state law "the correct means by which to name a county as a defendant in an action involving § 1983 claims (claims not arising out of contract) is to name the appropriate county officer in his or her official capacity, not the Board."). Here, the Amended Complaint appears to be seeking to impose municipal liability on the County as a result of Sheriff Taylor's direct participation in ordering the use of excessive force as well as through the jail's failure to train employees to use appropriate force. Doc. No. 46-3 at 1, 40-41. Accordingly, the Court cannot say at this stage that it is redundant or improper to bring a claim against Sheriff Taylor in his official capacity.

Of course, to succeed on his official capacity claims, Plaintiff must still allege facts sufficient to state a plausible claim for municipal liability. A claim for municipal liability under § 1983 requires the plaintiff to "prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *see also Simmons v.*

*Uintah Health Care Special Dist.,* 506 F.3d 1281, 1287 (10th Cir. 2007) ("Actions taken by a municipality's final policymakers, even in contravention of their own written policies, are fairly attributable to the municipality and can give rise to liability.").

With respect to his claim that Sheriff Taylor unlawfully ordered subordinate officers to use excessive force, Plaintiff has adequately stated a claim for municipal liability. Plaintiff describes circumstances where he was subjected to the use of excessive force and includes statements by the involved officers indicating that Sheriff Taylor instructed them to retaliate against and beat Plaintiff. As a final policy maker for the jail,[14] Sheriff Taylor's alleged actions represent acts of official policy that can give rise to municipal liability. Thus, assuming the truth of the allegations, Plaintiff has adequately alleged that Sheriff Taylor, acting in his official capacity, caused him to suffer a constitutional violation.

Plaintiff has not, however, adequately stated a claim for municipal liability based on a failure to train or supervise. To show that a failure to train or supervise employees rises to the level of a policy that can be fairly attributed to a government entity, "a plaintiff must 'identify a specific deficiency' that was obvious and 'closely related' to his injury." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citation omitted). Plaintiff's allegations do not meet this standard. The Amended Complaint states in conclusory fashion

---

[14] State law determines whether an official has final policymaking authority for purposes of § 1983. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997). Under Oklahoma law, the sheriff is the final policymaker regarding the county's jail. Okla. Stat. tit. 19, § 513; Okla. Stat. tit. 57, § 47. *See also Layton v. Bd. of Cty. Comm'rs of Oklahoma Cty.*, 512 F. App'x 861, 871 (10th Cir. 2013) (unpublished) ("The County may also be liable on the basis that [Sheriff Whetsel] is a final policymaker with regard to its jail, such that his actions may fairly be said to be those of the municipality.") (internal quotation marks omitted) (alterations in original).

25

that detention officers were inadequately trained and asserts that "hundreds" of inmates told Plaintiff that they witnessed detention officers use excessive force, but it fails to identify a specific training deficiency or include the names, dates, and details regarding any prior incidents involving the use of excessive force. Doc. No. 46-3 at 56-58; Doc. No. 46-4 at 54. Accordingly, Plaintiff has failed to state a claim for municipal liability based on a failure to train.[15]

#### 4. Fourteenth Amendment Due Process Claim Against Mr. Yerby

The Amended Complaint asserts claims under the Fourteenth Amendment for denial of adequate medical care and falsification of medical records and indicates that the claims are brought against Tadasha Morris, a nurse who worked at the jail. Doc. No. 46-3 at 26-31. In responding to Mr. Yerby's motion to dismiss, Plaintiff argued that these claims were also meant to be brought against Mr. Yerby. The R&R recommends finding that Plaintiff did not provide adequate notice of these claims to Mr. Yerby as required by Rule 8. Plaintiff objects to this recommendation, but provides no persuasive argument or authority in support of his objection. The Court agrees that the Amended Complaint does not state a claim against Mr. Yerby for denial of medical care or falsification of a medical record.

---

[15] To the extent Plaintiff intended to assert a failure to train claim against Sheriff Taylor and Mr. Honeycutt in their individual capacities, he has also failed to state a claim.

## CONCLUSION

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 79] is ADOPTED in part, as set forth herein. The Amended Complaint has adequately stated the following claims:

- Fourteenth Amendment claims for excessive force against Defendants Benjamin, Yerby, Taylor, and Honeycutt in their individual capacities;

- First Amendment retaliation claims against Defendants Benjamin, Yerby, Taylor, and Honeycutt in their individual capacities;

- Municipal liability claim against Sheriff Taylor in his official capacity based on the use of excessive force.

The following claims are DISMISSED WITHOUT PREJUDICE:

- Section 1983 conspiracy claims against all Defendants;

- Official capacity claims against Defendants Benjamin, Yerby, and Honeycutt;

- Failure to train or supervise claims against Defendants Taylor and Honeycutt in their individual capacities;

- Failure to train or supervise claims against Defendant Taylor in his official capacity;

- Fourteenth Amendment claims for falsification of reports against Defendant Benjamin in his individual capacity;

- Fourteenth Amendment claims for denial of medical care or falsification of reports against Defendant Yerby in his individual capacity;

- Fourteenth Amendment claims for destruction or suppression of evidence against Defendants Taylor and Honeycutt in their individual capacities;

- Fourteenth Amendment claims for destruction or suppression of evidence against Defendant Taylor in his official capacity.

- Fourteenth Amendment claims for excessive force by handcuffing against Defendants Taylor and Honeycutt in their individual capacities;

- Fourteenth Amendment claims for failure to protect against Defendants Taylor and Honeycutt in their individual capacities.

Accordingly, the motions to dismiss filed by Defendants Robert Benjamin, Matthew Yerby, Danny Honeycutt, and P.D.Taylor [Doc. Nos. 47, 48, 49] are **GRANTED** in part and **DENIED** in part, as set forth herein. Plaintiff's Motion for Leave of Court to File an Oversized Objection to 08/31/21 Report and Recommendation [Doc. No. 89] is **DENIED** as moot. This case is re-referred to Judge Green for further proceedings consistent with the initial case referral [Doc. No. 4].

      **IT IS SO ORDERED** this 23rd day of March, 2022.


_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge